## BALDWIN et al. v. BECKER.

(Circuit Court of Appeals, Eighth Circuit. December 16, 1921.)

No. 5791.

1. **Principal and surety ⬅59—Sureties not compensated not subject to rules as to compensated sureties.**

   Where sureties on a contractor's bond are not compensated, they are to be treated accordingly, and not subject to rules as to a compensated surety.

2. **Principal and surety ⬅100(4)—Alterations held to release sureties.**

   In an action on a contractor's bond for the construction of a bank and hotel building, where the contract provided that any alteration was to be on a written order of the architects only, alterations exceeding $1,000 in value, added to the contract price by agreement between the contractor and the owner, but without the knowledge and consent of the architects or sureties, *held* to release the sureties.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by Gustav Becker against Fred Baldwin and others. Judgment for plaintiff, and defendants bring error. Reversed, and new trial ordered.

John F. Simms, of Albuquerque, N. M. (Neill B. Field, Milton J. Helmick, and C. M. Botts, all of Albuquerque, N. M., on the brief), for plaintiffs in error.

H. B. Jamison, of Albuquerque, N. M., and Herndon J. Norris, of Prescott, Ariz. (Norris & Norris, of Prescott, Ariz., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

CARLAND, Circuit Judge. The defendant in error, hereafter plaintiff, commenced this action against plaintiffs in error, hereafter defendants, to recover damages upon a bond given to secure the faithful performance of a contract executed by and between defendant M. L. Porter and the plaintiff, whereby Porter agreed to construct the Becker bank and hotel building at Springerville, Ariz. A jury was duly waived and the action tried by the court, which rendered a judgment in favor of plaintiff for the amount claimed. The defendants Fred Baldwin, Lee Baldwin, and F. G. Bartlett, who were sureties on the bond, took a severance from Porter, the contractor, and have brought the case here, assigning error.

There was no error in overruling the motion for judgment on the pleadings, nor in overruling the motion for judgment at the close of plaintiff's case. The last motion was without effect, as the court reopened the case at plaintiff's request, additional evidence was taken, and the motion was not renewed.

It is assigned as error that the judgment entered is contrary to and directly in conflict with the special findings of fact made by the court.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Section 700, R. S. U. S. (Comp. St. § 1668). The particular matters in which the judgment is alleged not to be supported by the special findings arise out of certain alterations in the work required by the contract between Porter and the plaintiff. The provisions of the contract in relation to alterations is as follows:

"No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architects, and, when so made, the value of the work added or committed shall be computed by the architects, and the amount so ascertained shall be added or deducted from the contract price. In case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three disinterested arbitrators, one to be appointed by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties to this contract shall pay one-half of the expense of such reference."

Article 1 of the contract is as follows:

"The contractor, under the direction and supervision of Trost & Trost, architects, acting for the purposes of this contract as agents of the said owner, shall and will provide all material and perform all work mentioned in the specifications and as shown by the drawings prepared by the said architects for the erection and full completion of Becker bank and hotel building at Springerville, Ariz., which drawings and specifications are identified by the signatures of the parties hereto."

The court in reference to alterations found as follows:

"(7) That during the construction of the building the owner and the contractor agreed that the contractor should widen the sidewalk provided for in the specifications to make it cover an irrigation ditch under the sidewalk around the building, at an additional cost of one hundred ($100.00) dollars, to be added to the contract price, and which work was done by the contractor without the same having been authorized by the architects in writing, or the value thereof fixed by the architects, and which additional work was not known to the sureties, nor consented to by them, and was not included in the specifications or plans.

"(8) That in the course of the work the contractor, by agreement with the owner, changed the brick pilasters in front of the building from a two-inch projection, called for by the plans and specifications, to a four-inch projection, at an agreed valuation, between the contractor and the owner, of one hundred ($100.00) dollars, to be added to the contract price, without the written authority of the architects, or the valuation by them of said work, and without the knowledge or consent of the sureties.

"(9) That in the course of the construction of the said building the contractor, by agreement with the owner, added a partition in the vault in said building, which was not provided for in the plans and specifications, and the value of said additional partition was agreed upon by the owner and the contractor, and said partition was not authorized by the written order of the architects, nor the value thereof fixed by them, and the value of said additional partition was added to the contract price without the knowledge or consent of the sureties.

"(10) That in the construction of said building the contractor, by agreement with the owner, substituted Texas or Oregon pine flooring through a portion of the building in place of native pine flooring required by the specifications, without the written order of the architects, and without the knowledge or consent of the sureties.

"(11) That in the construction of said building the contractor, by agreement with the owner, changed a back coal chute in the building to a stairway

for wood, not included in the specifications, at an additional cost of one hundred sixty-seven and $^{50}/_{100}$ ($167.50) dollars, which was agreed upon between the owner and the contractor, and which was not authorized in writing by the architects, nor the value of said additional work fixed by the architects, and which was without the knowledge or consent of the sureties.

"(12) That during the construction of said building the contractor, by agreement with the owner, added an entrance way to the toilets from the barber shop in said building, not included in the specifications or plans, at a cost of seventy ($70.00) dollars, agreed upon between the contractor and the owner, and which was added to the contract price, and which was done without the written order of the architects, and without being valued by the architects, and without the knowledge or consent of the sureties.

"(13) That during the construction of said building the contractor, by agreement with the owner, installed an extra toilet room on the back of the hotel, next to the kitchen, at an agreed price of three hundred thirty-five ($335.00) dollars, which sum was added to the contract price, and which extra toilet room was not included in the plans and specifications for said building, and which was not authorized in writing by the architects, nor the value thereof fixed by the architects, and which was without the knowledge or consent of the sureties.

"(14) That during the construction of the said building the contractor, by agreement with the owner, put in one extra window on the back stairway of the said building, which was not included in the plans or specifications, at an agreed valuation between the contractor and the owner of twenty-seven and $^{50}/_{100}$ ($27.50) dollars, which was added to the contract price, and which additional window was not authorized in writing by the architects, nor the value thereof fixed by the architects, and which was without the knowledge or consent of the sureties.

"(15) That during the construction of said building the contractor, by agreement with the owner, put in deadening felt on the second floor of said building, at an agreed price of one hundred twenty-five ($125.00) dollars, which felt was not included in the plans or specifications, and which was not authorized in writing by the architects, nor the value thereof fixed by the architects, and which was without the knowledge or consent of the sureties.

"(16) That during the construction of said building the contractor, by agreement with the owner, added corner beads to protect plastered corners in the building, at an agreed price of eleven and $^{50}/_{100}$ ($11.50) dollars, which was added to the contract price of said building, and which corner beads were not included in the plans and specifications for said building, and were not authorized by the architects in writing, nor the value thereof fixed by the architects, and which was done without the knowledge or consent of the sureties.

"(17) That during the construction of said building the contractor, by agreement with the owner, installed certain extra plumbing on extra sinks in said building, not included in the plans and specifications, at an agreed price of thirty-five ($35.00) dollars, which was added to the contract price of said building, and which was done without the written order of the architects, and without the value thereof being fixed by the architects, and which was without the knowledge or consent of the sureties.

"(18) That during the construction of said building the contractor, by agreement with the owner, oiled the floors of said building, at an agreed price of sixty-one and $^{85}/_{100}$ ($61.85) dollars, which was added to the contract price of said building, and which was not included in the plans and specifications, and which was not authorized in writing by the architects, nor the value thereof fixed by the architects, and without the knowledge or consent of the sureties."

It was also found that the alterations and additions specified in findings No. 7–18, inclusive, were in the contemplation of the par-

ties at the time the contract and bond were executed; that they were made during the progress of the work and in the manner contemplated by the parties. We fail to discover how the alterations and additions specified in the findings were made in the manner contemplated by the parties signing the contract. The contract provided that no alterations should be made in the work shown by the drawings and specifications, except upon the written order of the architects. The only authority that was ever given for a departure from the specifications was signed by Becker, the owner, in one instance, and by Porter, the contractor, with Becker's O. K., in two others.

It is claimed by counsel for the plaintiff that Trost & Trost, architects, were by article 1 above mentioned appointed the agents of Becker, the owner, and that whatever Becker could do through his agents, he could do himself. Such a construction would entirely nullify article 3, which provides that alterations shall not be made, except upon the written order of the architects. This provision of the contract was of great value to the suretites. It does not seem possible that defendants would have become sureties for the faithful performance of the contract by Porter, the contractor, if the owner, Becker, was to have a free hand in regard to alterations. The sureties, when they became such, looked to the written contract then before them, not to some other contract that Becker and Porter might make. The architects were not only the agents of Becker, so as to bind the latter in what they did about alterations, but they were disinterested experts.

[1, 2] Counsel for plaintiff say in their brief that they do not rely upon the abolition of the doctrine of strictissimi juris, nor upon the fact that the sureties were not injured; but they maintain that only such changes were made and in such a manner as would not release the sureties under the letter of their obligation. It appears from the record that these securities were not compensated in any way for becoming sureties on Porter's bond. They are therefore to be treated accordingly, and not subject to the rule enforced by some courts as to a compensated surety. 21 Ruling Case Law, pars. 200-202. This being so, the following cases are clearly applicable: Miller v. Stuart et al., 9 Wheat. 680, 6 L. Ed. 189; Prairie State Nat. Bank v. U. S., 164 U. S. 233; [1] Reese v. U. S., 76 U. S. (9 Wall.) 13, 19 L. Ed. 541. In 16 Ann. Cas. 349, in a note to Woodruff v. Schultz, 155 Mich. 11, 118 N. W. 579, are collected the authorities on the question of observing the formalities required by a contract in making alterations. The alterations set forth in the findings exceed $1,000 in value. This amount was added to the contract price without the knowledge or consent of the architects or sureties, but simply by the agreement of the contractor and the owner. In Reese v. U. S., supra, Justice Field, in delivering the opinion of the court, said:

"Any change in the contract, on which they are sureties, made by the principal parties to it without their assent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even that it may be of advantage to the

[1] 17 Sup. Ct. 142, 41 L. Ed. 412.

sureties. They have a right to stand upon the very terms of their undertaking."

The other errors assigned relate to the sufficiency of the evidence to support the special findings, and we do not think that under the decisions of this court they are properly raised.

In view of what has been said, however, we are of the opinion that under the findings of the trial court the sureties were discharged, and therefore the findings do not support the judgment, which is reversed, and a new trial ordered.